# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AMBRIA GOODWIN,

                              Plaintiff,

vs.

EQUIFAX INFORMATION
SERVICES LLC, TRANS UNION,
LLC, and LEXISNEXIS RISK
SOLUTIONS, INC.,

                       Defendants.

CASE NO.:

**<u>JURY TRIAL
DEMANDED</u>**

## <u>COMPLAINT</u>

Ambria Goodwin ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and LexisNexis Risk Solutions, Inc. ("LexisNexis") (collectively "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, arising out of the credit bureau defendants' mixing of Plaintiff's credit files with another consumer's

1

credit file, despite the fact that the other consumer has an entirely different name and Social Security number than Plaintiff.

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.     Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.    These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.    "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.    Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities'". *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.     "Mixed files" create a false description and representation of a consumer's credit history.

9.     A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

4

10.    The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.    Mixed files are not a new phenomenon. Equifax, Trans Union, and LexisNexis have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.    More recently, Equifax, Trans Union, and LexisNexis have been the subject of numerous state attorney general actions relating to its mixed file problem.

13.    For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

---

[1] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited January 24, 2021; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited January 24, 2021.

14.    Notwithstanding Equifax's, Trans Union's and LexisNexis' notice and being subject to repeated enforcement actions, mixed files continue to occur dispute consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

15.    Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

16.    Equifax, Trans Union, and LexisNexis have each been sued thousands of times wherein an allegation was made that Equifax, Trans Union, and LexisNexis violated the FCRA. Moreover, Equifax, Trans Union, and LexisNexis are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

17.    Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

18.    For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive

6

damages. Despite the verdict, Equifax, Trans Union, and LexisNexis continue to mix consumers' credit files with other consumers' credit files.

19.    In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms.  Williams' disputes. Despite the verdict, Equifax, Trans Union, and LexisNexis continue to mix consumers' credit files with other consumers' credit files.

20.    In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4 million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Trans Union, and LexisNexis continue to mix consumers' credit files with other consumers' credit files.

21.    Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on

first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Trans Union, and LexisNexis continue to mix consumers' credit files with other consumers' credit files.

22.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

23.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

24. Finally, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, Trans Union, and LexisNexis, to review their procedures when a mixed file case occurs.

25. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

26. Plaintiff Ambria Goodwin ("Plaintiff") is a natural person who resides in the State of Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

27. Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company and resides in the State of Georgia, including in this District.

28. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

29. Defendant Trans Union, LLC ("Trans Union") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

30.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

31.     Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") is a limited liability company that is authorized to do business in the State of Georgia, including in this District.

32.     LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

35.    Plaintiff mailed multiple written disputes regarding inaccurate information in Plaintiff's Equifax credit report to Equifax located in Fulton County; Atlanta, Georgia.

36.    Defendant Equifax received Plaintiff's multiple written disputes in Fulton County; Atlanta, Georgia.

37.    Upon receipt of Plaintiff's disputes, Defendant Equifax forwarded such disputes to furnishers via Automated Consumer Dispute Verification electronic forms. Upon completion of its investigations pursuant to 15 U.S.C. § 1681s-2(b), the furnishers responded to Defendant Equifax's electronic communications, which originated from Atlanta, Georgia, by sending its results electronically to Defendant Equifax in Fulton County; Atlanta, Georgia

38.    Defendant Equifax then processed the dispute results at its National Consumer Assistance Center in Atlanta, Georgia, and mailed Plaintiff its final dispute results from Atlanta, Georgia.

## FACTS

### Summary of the Fair Credit Reporting Act

39.    The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the

rights of consumers to fairness and accuracy in the reporting of their credit information.

40.    The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

41.    The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**The Credit Bureau's Processing of Credit Information**

42.    Defendants Equifax, Trans Union, and LexisNexis regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

43.    These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

44.    Defendants collect information from thousands of furnishers.

45.    The process by which Defendants receive, sort, and store information is largely electronic.

46.    Furnishers report credit information to Defendants through the use of coded tapes that are transmitted on a monthly basis through software known as Metro 2.

47.    Defendants take the credit information reported by furnishers and create consumer credit files.

48.    Defendants maintain credit files on more than 200 million consumers.

49.    Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**Equifax, Trans Union, and LexisNexis's Mixed File Problem**

50.    Defendants know that different consumers can have similar names.

51.    Defendants know that different consumers can have similar Social Security numbers.

52.    Defendants know that different consumers with similar names can also have similar Social Security numbers.

53.    Defendants know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

54.    Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

55.    Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

56.    Sometimes Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

57.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

58.    Despite Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiff's credit report was still generated by Defendants containing information belonging to another consumer.

59.     A mixed or merged credit file is the result of Defendants inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

60.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Defendants to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

61.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendants.

62.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants.

63.     These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

64.    Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

## The Credit Bureaus' Method for Considering Consumer Credit Report Disputes

65.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

66.    Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

67.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

68.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately

appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

69.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

70.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

71.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

72.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

73.     The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

74.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Inaccurate Information on Plaintiff's Equifax Credit Report as of February 16, 2023**

75.    Upon information and belief, as of February 16, 2023, Plaintiff's Equifax credit report contained the following accounts, which belong to another consumer:

Account Name      Merrick Bank
Account Number  546316630301XXXX

Account Name      Prestige Financial Services
Account Number  69244XXXX

Account Name      Security Finance Corp.
Account Number  70031XXXX

Account Name      Webbank/Fingerhut
Account Number  XXX636992110314XXXX

Account Name      World Finance Corp.
Account Number  10010452XXXX

Account Name        Amsher Collections
Account Number      3969XXXX
Original Creditor   T-Mobile

Account Name        Credence Resource Management
Account Number      27538XXXX
Original Creditor   AT&T

Account Name        Credit Collection Services
Account Number      71926XXXX
Original Creditor   Progressive

Account Name        LVNV Funding LLC
Account Number      517805966373XXXX
Original Creditor   Capital One NA

Account Name        Midland Credit Management
Account Number      31941XXXX
Original Creditor   Webbank

Account Name        Fetti Fingerhut/Webbank
Account Number      6336992402210XXXX

76.     Defendant Equifax mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendant Equifax to realize Plaintiff is not the same person as this other consumer include the following:

    a) Plaintiff's legal name is Ambria Goodwin and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

    b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Inaccurate Information on Plaintiff's Trans Union Credit Report as of February 16, 2023**

77.    Upon information and belief, as of February 16, 2023, Plaintiff's Trans Union credit report contained the following accounts, which belong to another consumer:

| | |
|---|---|
| Account Name | Merrick Bank |
| Account Number | 546316630301XXXX |
| | |
| Account Name | Prestige Financial Services |
| Account Number | 69244XXXX |
| | |
| Account Name | Security Finance Corp. |
| Account Number | 70031XXXX |
| | |
| Account Name | Webbank/Fingerhut |
| Account Number | XXX636992110314XXXX |
| | |
| Account Name | World Finance Corp. |
| Account Number | 10010452XXXX |

Account Name     Amsher Collections
Account Number   3969XXXX
Original Creditor   T-Mobile

Account Name     Credence Resource Management
Account Number   27538XXXX
Original Creditor   AT&T

Account Name     Credit Collection Services
Account Number   71926XXXX
Original Creditor   Progressive

Account Name     LVNV Funding LLC
Account Number   517805966373XXXX
Original Creditor   Capital One NA

Account Name     Midland Credit Management
Account Number   31941XXXX
Original Creditor   Webbank

Account Name     Fetti Fingerhut/Webbank
Account Number   6336992402210XXXX

78.    Defendant Trans Union mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendant Trans Union to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Ambria Goodwin and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Revity Credit Union Denies Plaintiff Credit on or about April 4, 2023**

79.    On or about April 4, 2023, Plaintiff sought to obtain credit and submitted a credit application.

80.    Upon submitting a credit application, Revity Credit Union denied Plaintiff's credit application.

81.    Revity Credit Union relied on the contents of Plaintiff's credit files at the time it denied Plaintiff's credit application. As of April 4, 2023, the date Revity Credit Union accessed Plaintiff's credit file, it was mixed with another consumer's personal and credit account information.

82.    Defendants' inaccurate credit reporting adversely impacted Plaintiff's credit score and caused Revity Credit Union to deny Plaintiff's credit application.

**Carvana Offers Plaintiff Higher Terms on March 21, 2024**

83.    On or about March 21, 2024, Plaintiff sought to obtain an auto loan and submitted a credit application.

84.    Upon submitting a credit application, Carvana offered Plaintiff credit at an inflated interest rate and increased down payment.

85.    Carvana relied on the contents of Plaintiff's credit files at the time it denied Plaintiff's credit application. As of March 21, 2024, the date Carvana accessed Plaintiff's credit file, it was mixed with another consumer's personal and credit account information.

86.    Defendants' inaccurate credit reporting adversely impacted Plaintiff's credit score and caused Carvana to offer Plaintiff an increased interest rate and down payment.

**Auffenberg Kia Denies Plaintiff Credit on March 26, 2024**

87.    On or about March 26, 2024, Plaintiff sought to obtain an auto loan and submitted a credit application.

88.    Upon submitting a credit application, Auffenberg Kia denied Plaintiff's credit application.

89.    Auffenberg Kia relied on the contents of Plaintiff's credit files at the time it denied Plaintiff's credit application. As of March 26, 2024, the date

Auffenberg Kia accessed Plaintiff's credit file, it was mixed with another consumer's personal and credit account information.

90.    Defendants' inaccurate credit reporting adversely impacted Plaintiff's credit score and caused Auffenberg Kia to deny Plaintiff's credit application.

**Plaintiff Sees Inaccurate Information on Trans Union Credit Report as of April 10, 2024**

91.    As of April 10, 2024, Plaintiff's Trans Union credit report contained the following accounts, which belong to another consumer:

Account Name      Merrick Bank
Account Number   546316630301XXXX

Account Name      Prestige Financial Services
Account Number   69244XXXX

Account Name      Security Finance Corp.
Account Number   70031XXXX

Account Name      Webbank/Fingerhut
Account Number   XXX636992110314XXXX

Account Name      World Finance Corp.
Account Number   10010452XXXX

Account Name      Amsher Collections
Account Number   3969XXXX
Original Creditor   T-Mobile

Account Name      Credence Resource Management
Account Number    27538XXXX
Original Creditor   AT&T

Account Name      Credit Collection Services
Account Number    71926XXXX
Original Creditor   Progressive

Account Name      LVNV Funding LLC
Account Number    517805966373XXXX
Original Creditor   Capital One NA

Account Name      Midland Credit Management
Account Number    31941XXXX
Original Creditor   Webbank

Account Name      Fetti Fingerhut/Webbank
Account Number    6336992402210XXXX

92.     Defendant Trans Union mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendant Trans Union to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Ambria Goodwin and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

> b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's Dispute with Equifax and Trans Union on April 26, 2024**

93.    On or about April 26, 2024, Plaintiff filed written disputes regarding the accounts that do not belong to Plaintiff with Defendants because Defendants were reporting another consumer's accounts and personal information.

94.    Plaintiff's April 26, 2024 disputes specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureaus would be able to properly identify Plaintiff and locate Plaintiff's credit file.

95.    Plaintiff requested they reinvestigate the disputed information, correct the reporting, and send a corrected copy of the credit report.

**Equifax's Response to Plaintiff's April 2024 Dispute**

96.    Defendant Equifax did not respond to Plaintiff's April 2024 dispute.

97.    Defendant Equifax did not indicate that Plaintiff's April 2024 dispute was found to be frivolous or irrelevant.

98.    Defendant Equifax failed to conduct a reinvestigation of Plaintiff's 2024 dispute, in violation of 15 U.S.C. § 1681i.

99.    Defendant failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

100.    Thereafter, Equifax continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

### Trans Union's Response to Plaintiff's April 2024 Dispute

101.    Defendant Trans Union updated the reporting to remove the accounts and personal information belonging to another consumer.

### Defendant LexisNexis Fails to Provide Credit Disclosure

102.    On or about September 24, 2024, Plaintiff requested a credit disclosure from Defendant LexisNexis.

103.    Defendant LexisNexis failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

### Plaintiff Sees Inaccurate Information on LexisNexis Credit Report as of October 19, 2024

104.    As of October 19, 2024, the Comprehensive Loss Underwriting Exchange located in Plaintiff's LexisNexis credit report contained the following insurance claim data, which belongs to another consumer:

- Country Mutual, claim date December 28, 2023, attributed to Andria Goodwin
- Farmers New Ventures, claim date December 29, 2023, attributed to Andria Goodwin
- Erie Insurance Group, claim date December 28, 2023, attributed to Andria Goodwin
- State Farm, claim date December 29, 2023, attributed to Andria Goodwin

105.   As of October 19, 2024, the Comprehensive Loss Underwriting Exchange located in Plaintiff's LexisNexis credit report contained the following insurance carriers, which belong to another consumer:

- Erie Insurance
- Progressive Insurance
- Bristol West Insurance Group
- Geico Insurance

106.   Defendant LexisNexis mixed another consumer's personal and account information into Plaintiff's credit reports despite the fact that numerous discrepancies exist between their personal identification information. The discrepancies that should have caused Defendant LexisNexis to realize Plaintiff is not the same person as this other consumer include the following:

a) Plaintiff's legal name is Ambria Goodwin and the personal and account information Defendant mixed into Plaintiff's credit reports belongs to another consumer; and

b) Plaintiff's Social Security number is different than the other consumer's Social Security number.

**Plaintiff's Dispute with LexisNexis on October 30, 2024**

107. On or about October 30, 2024, Plaintiff filed written disputes regarding the accounts that do not belong to Plaintiff with Defendants because Defendants were reporting another consumer's accounts and personal information.

108. Plaintiff's October 30, 2024 dispute specifically included Plaintiff's full name, date of birth, Social Security number, and current address, so that the credit bureau would be able to properly identify Plaintiff and locate Plaintiff's credit file.

109. Plaintiff requested they reinvestigate the disputed information, correct the reporting, and send a corrected copy of the credit report.

**LexisNexis' Response to Plaintiff's October 2024 Dispute**

110. Defendant LexisNexis did not respond to Plaintiff's October 2024 dispute.

111. Defendant LexisNexis did not indicate that Plaintiff's October 2024 dispute was found to be frivolous or irrelevant.

112.   Defendant LexisNexis failed to conduct a reinvestigation of Plaintiff's 2024 dispute, in violation of 15 U.S.C. § 1681i.

113.   Defendant failed to provide the requested credit disclosure in violation of 15 U.S.C. § 1681g.

114.   Thereafter, LexisNexis continued to report personal and credit account information belonging to another consumer in Plaintiff's credit file.

115.   As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit files.

116.   Equifax, Trans Union, and LexisNexis maintain/maintained multiple credit files for Plaintiff.

117.   At least one of Plaintiff's Equifax, Trans Union, and LexisNexis credit files contain or have contained personal information and credit account information, including derogatory collection accounts and charge offs, which do not belong or pertain to her.

118. Equifax, Trans Union, and LexisNexis' merging and matching algorithms have caused Plaintiff's credit files to become mixed with personal and credit account information belonging to a different consumer.

119. Within the two (2) years previous to the filing of this Complaint, Equifax, Trans Union, and LexisNexis prepared and distributed one or more consumer reports, as that term is defined by 15 U.S.C. § 1681a(d), pertaining to Plaintiff that contained misleading and inaccurate information which belongs to another consumer, including without limitation, personal information and credit accounts, which actually belong to a different consumer.

120. Equifax, Trans Union, and LexisNexis failed to maintain and follow reasonable procedures to assure the maximum possible accuracy of the personal and credit account information contained within at least one of the credit files they maintain for Plaintiff.

121. Equifax, Trans Union, and LexisNexis know that their matching algorithms are flawed and frequently result in mixed information and credit files belonging to two different consumers.

122. Equifax, Trans Union, and LexisNexis have been sued thousands of times by consumers and suffered judgments as a result of mixing consumer credit information and credit files.

123.   When Equifax, Trans Union, and LexisNexis assemble consumer reports for their subscribers, they allow such subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases, like the instant matter, belong to another consumer.

124.   Equifax, Trans Union, and LexisNexis also fail to require an exact match of all digits of a consumer's Social Security number, which may in some cases result in the inclusion of credit information which belongs to another consumer.

125.   However, when consumers like Plaintiff request copies of their credit files, Equifax, Trans Union, and LexisNexis require a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

126.   Consequently, Equifax, Trans Union, and LexisNexis' own procedures for disclosing information to consumers, as they are required to do by the FCRA, tend to mask or conceal the problem of mixed files.

127.   By concealing this information, Equifax, Trans Union, and LexisNexis impair the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

128.   Equifax, Trans Union, and LexisNexis have failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports, in violation of 15 U.S.C. § 1681e(b).

129.   Equifax, Trans Union, and LexisNexis' failure to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit files and of Plaintiff's consumer reports was negligent and/or willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants)

130.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-129 as if fully stated herein.

131.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file they published and maintain concerning Plaintiff.

132.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and

money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

133.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

134.    Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendants Equifax, Trans Union, and LexisNexis)

135.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-129 as if fully stated herein.

136.    Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after they received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions

of both disputed credit accounts and hard inquiries; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

137.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed in Plaintiff's credit file.

138.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

139.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681g**
**Failure to Provide Disclosures to Plaintiff**

140.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-129 as if fully stated herein.

141.   Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff's credit disclosure after each request.

142.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from Plaintiff's credit; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment.

143.   Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

144.   Plaintiff is entitled to recover attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)      Determining that each Defendant negligently and/or willfully violated the FCRA;

b)      Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c)      Awarding Plaintiff reasonable attorney's fees and costs from each Defendant as provided by the FCRA; and

d)      Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

145.    Plaintiff demands a trial by jury.

Dated:        March 3, 2025

                                    */s/ Joseph P. McClelland*
                                    Joseph P. McClelland
                                    LAW FIRM OF JOSEPH P.
                                    MCCLELLAND, LLC
                                    Georgia Bar No: 483407
                                    235 East Ponce de Leon Avenue,
                                    Suite 215
                                    Decatur, GA 30030
                                    Telephone: (770) 775-0938
                                    Fax: (470) 468-0070
                                    Email: joseph@jacksonlaws.com

                                    *ATTORNEY FOR PLAINTIFF*